Filed 1/30/25  P. v. Izaguirre CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHNNY A. IZAGUIRRE,<br><br>    Defendant and Appellant. | B338377<br><br>(Los Angeles County<br>Super. Ct. No.  BA232697) |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Reversed and remanded.

Michael H. Casey, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, Steven E. Mercer, Deputy Attorney General, for Plaintiff and Respondent.

_____

Johnny Izaguirre appeals from the trial court's order denying his petition for recall and resentencing pursuant to Penal Code section 1170, subdivision (d).[1]  He argues that the trial court erred in concluding that his sentence was not functionally equivalent to life in prison without the possibility of parole.  The People concede that reversal and remand are warranted.  We agree.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 2003, Johnny Izaguirre was convicted of first degree murder, three counts of first degree attempted murder, and various enhancements.  (See §§ 187, subd. (a), 664; see also §§ 190.2, subd. (a)(21), 12022.53, subds. (b)–(d), 12022.55, 12022.7, subd. (a).)  He was sentenced to life in prison without the possibility of parole (LWOP) on the murder count plus 25 years to life on a firearm enhancement; he was further sentenced to concurrent life terms on the attempted murder counts, one with a 25 year to life firearm enhancement and two with 20-year firearm enhancements.

After Izaguirre filed a habeas petition, he was resentenced in June 2016 to a prison term of 40 years plus 96 years to life.[2]

---

[1]     All further undesignated statutory references in this opinion are to the Penal Code.

[2]     There is some ambiguity in the record regarding whether Izaguirre was in fact resentenced to 136 years to life.  Because we agree with Izaguirre that the difference between those sentences is immaterial to the disposition of this appeal, we adopt his characterization of his resentence term (40 years plus 96 years to life).

Izaguirre filed a petition for recall and resentencing pursuant to section 1170, subdivision (d)(1) in October 2023. He asserted that he was under the age of 18 when he committed his crimes, had been incarcerated for at least 15 years, had a de facto LWOP sentence, and met three qualifying circumstances for relief.

The trial court denied the petition on May 14, 2024. It concluded that Izaguirre was ineligible for section 1170, subdivision (d)(1) relief on the ground that he was not serving a sentence that was LWOP or its functional equivalent. Izaguirre timely appealed. (See § 1237, subd. (b); Cal. Rules of Court, rule 8.308(a).)

## DISCUSSION

### A. Standard of Review

Whether Izaguirre's sentence is the functional equivalent of LWOP is a mixed question of law and fact. (See *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.) It is a predominantly legal question because the underlying facts here are not disputed, so we review it de novo. (See *People v. Cromer* (2001) 24 Cal.4th 889, 894; *Crocker*, *supra*, at p. 888.)

### B. Overview of Section 1170, Subdivision (d)(1) Eligibility

Section 1170, subdivision (d)(1)(A) allows certain defendants serving a LWOP sentence (including those who were under the age of 18 at the time of their offenses and who have been incarcerated for at least 15 years)[3] to petition their sentencing courts for recall and resentencing. (*See In re Kirchner*

---

[3] The additional statutory requirements for relief are not relevant to this appeal. (See, e.g., § 1170, subds. (d)(1)(B), (2), (5).)

(2017) 2 Cal.5th 1040, 1049–1050; *People v. Sorto* (2024) 104 Cal.App.5th 435, 442–444.)  The language of that statute refers to defendants "sentenced to imprisonment for life without the possibility of parole" and does not explicitly mention offenders serving sentences that are the functional equivalents of LWOP. (§ 1170, subd. (d)(1); *People v. Heard* (2022) 83 Cal.App.5th 608, 626 (*Heard*).)

However, our colleagues in the Fourth District have decided that defendants serving sentences functionally equivalent to LWOP are nevertheless entitled to avail themselves of section 1170, subdivision (d) relief as a matter of the equal protection afforded by the California and United States Constitutions.  (See *Heard, supra*, 83 Cal.App.5th at pp. 627, 633–634; see also U.S. Const. amend. XIV; Cal. Const., art. I, § 7(a).)  That court reasoned there was no rational basis upon which to make "juvenile offenders sentenced to explicit terms of [LWOP] eligible for resentencing under section 1170, subdivision (d)(1), while denying the same opportunity to juvenile offenders sentenced to terms that amount to the functional equivalent of [LWOP]."  (*Heard*, at p. 631.)  That conclusion has since been reiterated by the Fourth District and by our district.  (See *Sorto, supra,* 104 Cal.App.5th at p. 454; see also *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1057–1059 (*Bagsby*).)

## C. Reversal is Warranted Because Izaguirre's Sentence is Functionally Equivalent to LWOP

The trial court denied Izaguirre's section 1170, subdivision (d)(1) petition on the ground that he was not serving a sentence functionally equivalent to LWOP.  We agree with the parties that was error.

4

There is essentially no dispute that the length of Izaguirre's operative sentence, standing alone, is functionally equivalent to LWOP.  The California Supreme Court has already decided "that a sentence of 50 years to life is functionally equivalent to LWOP."  (*People v. Contreras* (2018) 4 Cal.5th 349, 369.)  Izaguirre's sentence of 40 years plus 96 years to life is therefore plainly the functional equivalent of LWOP.  (*Ibid.*; see also *Heard*, *supra*, 83 Cal.App.5th at p. 628.)

The trial court nevertheless determined otherwise because Izaguirre would be eligible in approximately 2027 for a youth offender parole hearing under section 3051.  Section 3051 grants some youth offenders parole hearings after they have completed specified periods of incarceration.  (See *People v. Hardin* (2024) 15 Cal.5th 834, 842–843 (*Hardin*); *Sorto*, *supra*, 104 Cal.App.5th at pp. 443–444; § 3051, subd. (b).)  The trial court reasoned that Izaguirre's entitlement to a future section 3051 parole hearing meant that he was "not serving the functional equivalent of life without the possibility of parole" because "[h]e has a realistic chance to rejoin society" in 2027.  Although Izaguirre argued that any future section 3051 hearing was irrelevant to the section 1170, subdivision (d)(1) relief he sought under the reasoning of *Heard*, *supra*, the trial court disagreed.  (*Heard, supra,* 83 Cal.App.5th at p. 628.)  It distinguished that case on the ground that the defendant there had "to serve 103 years before he was parole eligible," and thus that Heard's sentence "was the functional equivalent of a [LWOP] sentence."

The trial court was mistaken.  In *Heard*, *supra*, 83 Cal.App.5th at pages 628–629, the defendant was indeed eligible for a section 3051 youth offender hearing that shortened his 103 year sentence, but that did not "undermine[] the conclusion that

5

his sentence constitutes a de facto life without parole sentence." (*Ibid.*) The court explained that for purposes of determining eligibility for section 1170, subdivision (d)(1) relief, the trial court should look to the length of the sentence imposed, without regard to the effect of any later relief to which the defendant might become entitled. (See *Heard*, at pp. 628–629.) Thus, because Heard had initially received a 103-year sentence that was the functional equivalent of LWOP, he was eligible for relief under section 1170, subdivision (d)(1), notwithstanding his separate eligibility for a section 3051 youth offender hearing, which would allow him to receive a parole hearing in his twenty-fifth year. (*Heard*, at pp. 628–629, 633–634.) "As another court has explained, the statutory resentencing provision 'uses the phrase "*was sentenced*" and refers to the past.' " (*Id.* at p. 629.)

Likewise, as explained above, Izaguirre's 40 years plus 96 years to life sentence that he received in 2016 is functionally equivalent to LWOP. That he may soon be eligible for a youth offender hearing under section 3051 is immaterial to that conclusion. (See *Sorto*, *supra*, 104 Cal.App.5th at pp. 448, 454.)

### D. *Hardin* Did Not Undermine *Heard's* Equal Protection Analysis

The trial court suggested that *Heard*, *supra*, 83 Cal.App.5th 608, had been undermined by *Hardin*, *supra*, 15 Cal.5th 834. In *Hardin,* our Supreme Court determined that the Legislature's decision to exclude certain youthful offenders serving LWOP sentences from eligibility for section 3051 parole hearings did not violate equal protection. (*Hardin*, at pp. 838–839, 846, 866.) The trial court seized on a quotation from *Hardin* in which the court explained that it had previously referred to functional equivalent of LWOP sentences "in the context of

6

identifying the category of juvenile offenders to whom the Eighth Amendment limitations on LWOP sentences apply," and in that context, "what matters is only whether the sentence . . . forecloses any realistic chance for a juvenile offender to rejoin society." (*Id.* at p. 864.) But that discussion of Eighth Amendment principles in the context of excluding certain offenses from eligibility for parole hearings is not the same as the equal protection issue raised in *Heard* and by Izaguirre here.

At the time of its ruling, the trial court did not have the benefit of subsequent decisions from the Court of Appeal explaining that *Hardin* did not undermine *Heard*'s analysis of the eligibility of youthful offenders serving sentences functionally equivalent to LWOP for section 1170, subdivision (d)(1) relief. (See *Sorto*, *supra*, 104 Cal.App.5th at pp. 445–446; *Bagsby*, *supra*, 106 Cal.App.5th at pp. 1059–1060.) Those cases persuasively explain that *Hardin* and *Heard* are consistent: "*Hardin* holds the Legislature reasonably may disfavor explicit LWOP offenders based on the rationale that they are more culpable than functionally equivalent LWOP offenders. [Citation.] In *Heard* . . . the court considered the opposite situation, asking whether it is reasonable to grant relief to explicit LWOP offenders while denying the same relief to functionally equivalent LWOP offenders." (*Sorto, supra*, 104 Cal.App.5th at p. 446.)

Izaguirre's sentence is functionally equivalent to LWOP, and the trial court erred in deciding otherwise. We therefore reverse its denial of Izaguirre's petition and remand for further proceedings.[4]

---

[4] In light of our conclusion that remand is warranted, Izaguirre's additional argument regarding ineffective assistance of counsel is moot.

7

## DISPOSITION

We reverse the order denying Izaguirre's petition for relief under section 1170, subdivision (d).  On remand, the court shall reconsider Izaguirre's petition in accordance with this opinion.


RICHARDSON, J.

We concur:


ASHMANN-GERST, Acting P. J.


CHAVEZ, J.